**EXHIBIT A**

*Court of Common Pleas, Columbiana County, Lisbon, Ohio*

## *Summons*

Rule 4 1970, Ohio Rules of Civil Procedure

Case No.: 2022 CV 00234

PRIME HEALTHCARE FOUNDATION EAST LIVERPOOL LLC
DBA EAST LIVERPOOL CITY HOSPITAL
425 WEST FIFTH STREET
EAST LIVERPOOL, OH 43920

SCOTT A WASHAM
JUDGE
*Summons on Complaint*

Plaintiff(s)

VS.

AETNA HEALTH INC
ON BEHALD OF ITSELF AND ITS AFFILIATES
4400 EASTON COMMONS WAY, SUITE 125
COLUMBUS, OH 43219

Defendant(s)

> **FILED**
>
> Columbiana County Common Pleas Court
> **June 01, 2022**
>
> **ANTHONY J. DATTILIO**
> **CLERK OF COURTS**

To the below named Defendant(s):
AETNA HEALTH INC
ON BEHALD OF ITSELF AND ITS AFFILIATES
4400 EASTON COMMONS WAY, SUITE 125
COLUMBUS, OH 43219

You are hereby summoned that a complaint (a copy of which is hereto attached and made a part hereof) has been filed against you in this Court by the Plaintiff(s) named herein.

You are required to serve upon the Plaintiff's Attorney, or upon the Plaintiff if no attorney of record, a copy of your answer to the complaint within 28 days after service of this summons upon you, exclusive of the day of service. **Said answer must be filed with this Court within three (3) days after service on Plaintiff's Attorney.**

The name and address of the Plaintiff's Attorney is as follows:

SCOTT HOLBROOK ESQ                    (216) 621-0200 (W)
127 PUBLIC SQUARE KEY TOWER
SUITE 2000
CLEVELAND, OH 44114

If you fail to appear and defend, judgment by default will be taken against you for the relief demanded in the complaint.

**Witness,** My signature and seal of said Court on this June 01, 2022,

**Anthony J. Dattilio**
105 South Market Street
Lisbon, Ohio 44432

*signature*

Deputy Clerk



Certified Article Number

9414 7266 9904 2184 2777 23

SENDER'S RECORD

9590 9266 9904 2184 2777 26

### IN THE COURT OF COMMON PLEAS
### COLUMBIANA COUNTY, OHIO

| | |
|---|---|
| Prime Healthcare Foundation – East Liverpool, LLC d/b/a East Liverpool City Hospital,<br>425 West Fifth Street<br>East Liverpool, OH 43920 | CASE NO. CV- *2022 CV 234*<br><br>JUDGE *SCOTT WASHAM* |
| Plaintiff, | |
| vs. | COMPLAINT |
| Aetna Health Inc., on behalf of itself and its Affiliates,<br>CT Corporation System<br>4400 Easton Commons Way, Suite 125<br>Columbus, OH 43219 | **Jury Demand Endorsed Hereon** |
| Defendant. | |

## COMPLAINT

Plaintiff Prime Healthcare Foundation – East Liverpool, LLC d/b/a East Liverpool City Hospital ("ELCH") hereby asserts its Complaint for Damages against Defendant Aetna Health Inc., on behalf of itself and its Affiliates ("Aetna"), and respectfully shows the Court as follows:

## NATURE OF THE ACTION

1.     This action is brought by ELCH, an award-winning general acute care hospital located in East Liverpool, Ohio, to recover more than $6,000,000 owed to it by Aetna for in-network emergency care and other medical services that ELCH provided to hundreds of patients who had insurance coverage under an Aetna-administered health care benefit plan.

2.     ELCH and Aetna entered into a written contract under which ELCH agreed to provide certain medical services to patients enrolled in certain Aetna benefit plans and, in return,

Aetna agreed to pay ELCH for those services according to the rates set forth in the parties' contract. ELCH provided medical services to patients enrolled in Aetna benefit plans and performed all of its obligations under the parties' contract, but Aetna failed to fully and properly pay ELCH for more than $6,000,000 of those services, as required by the parties' contract and applicable law. ELCH therefore brings this lawsuit seeking to recover damages from Aetna as set forth herein.

## THE PARTIES

3.      ELCH is a Delaware limited liability company authorized to transact business in the State of Ohio, with its principal place of business in Columbiana County.

4.      Aetna Health Inc. is a Pennsylvania corporation authorized to transact business in the State of Ohio. Aetna may be served via its registered agent, CT Corporation System, at 4400 Easton Commons Way, Suite 125, Columbus, OH 43219.

5.      Upon information and belief, Aetna Health Inc.'s Affiliates include Aetna Better Health Inc. d/b/a Aetna Better Health of Ohio and Aetna of Ohio Inc., both of which are Ohio corporations.

## JURISDICTION AND VENUE

6.      This Court has jurisdiction over this matter pursuant to Ohio Rev. Code § 2305.01, as the amount in controversy exceeds $15,000.

7.      This Court has personal jurisdiction over Aetna because Aetna Health Inc. is registered to do business in Ohio and its Affiliates are Ohio corporations with their principal places of business in Ohio; Aetna Health Inc. is licensed as a health insuring corporation by the Ohio Department of Insurance; Aetna entered into the contract on which this lawsuit is based in the State of Ohio, has regularly transacted business in the State of Ohio, and has had a continuous business relationship with East Liverpool City Hospital for more than a decade; and Aetna committed the wrongful acts alleged herein in the State of Ohio. Moreover, upon information and belief, Aetna

has contracted to provide or arrange for healthcare services and/or healthcare insurance for persons within the State of Ohio, has purposefully directed its activities at East Liverpool City Hospital and citizens of the State of Ohio, and the injuries related to those activities were incurred within the State of Ohio.

8.      Venue is proper in Columbiana County pursuant to Civil Rule 3(B) because Aetna conducts business in Columbiana County and because Aetna's conduct giving rise to this lawsuit occurred and continues to occur in Columbiana County.

## BACKGROUND

### *Relationship Between ELCH and Aetna*

9.      ELCH is a 501(c)(3) non-profit, general acute-care hospital that provides emergency care and other critically needed medical services to patients in Ohio twenty-four hours a day, seven days a week, without regard to patients' insurance coverage or ability to pay for services.

10.      ELCH is part of an award-winning, community-based health system -- Prime Healthcare -- that operates forty-six acute care hospitals in fourteen states, many of which are in underserved communities.  Prime Healthcare has repeatedly been recognized as one of the "15 Top Health Systems" in the country based on quality of care, efficiency, and patient satisfaction. In addition, Prime Healthcare's hospitals have been named among the "100 Top Hospitals" in the country more than 55 times based on clinical, operational, and patient satisfaction metrics; they have received more Patient Safety Excellence Awards from Healthgrades than any other health system in the past six years; they have received more than 200 five-star achievements for clinical excellence in a variety of specialties; and they are frequently recognized as "Top Performers on Key Quality Measures" by The Joint Commission, the leading medical accreditation organization.

11.     ELCH has received numerous awards in recognition of its dedication to providing high-quality patient care. ELCH has been named four times (including most recently in 2021) to the Fortune/IBM Watson Health Top 100 Hospitals list, which recognizes the top-performing hospitals in the nation.  For three consecutive years, ELCH has also received the "Everest Award," which recognizes hospitals that have earned the "100 Top Hospitals" designation and are ranked among the top 100 hospitals in the nation for rate-of-improvement during a five-year period.  In addition, ELCH was the only hospital in its region to receive a Leapfrog Grade "A" award for Patient Safety in 2018;[1] it has been awarded multiple Five-Star Awards from Healthgrades for outstanding clinical treatment; and it received a Healthgrades Patient Safety Excellence Award in 2018, recognizing ELCH among the top 5% of acute care hospitals for patient safety in the nation.

12.     Aetna is a "health maintenance organization" and an "insurer" that is licensed by the State of Ohio and is subject to Ohio's Insurance Code.  *See* Ohio Rev. Code §§ 3727.01, 3902.02.

13.     Aetna uses a network of participating health care providers (*i.e.*, "in-network providers") who enter into written contracts with Aetna and who agree to accept negotiated, discounted rates of payment from Aetna in return for receiving "in-network" status.

14.     At all times relevant hereto, ELCH was an in-network provider for Aetna.

15.     ELCH and Aetna are parties to a Facility Participation Agreement effective as of March 1, 1996 (as amended from time to time, the "Agreement").  The Agreement, as amended, remains in effect.  Redacted copies of the Agreement and the amendments thereto are attached hereto, collectively, as Exhibits A.  Confidential and proprietary information related to the

---

[1] The Leapfrog Group is a national nonprofit organization committed to improving health care quality and safety for consumers.

reimbursement rates and compensation required to be paid under the Agreement has been redacted from the copies of the Agreement and amendments attached hereto to preserve their confidentiality.  Upon information and belief, Aetna has complete, unredacted copies of the Agreement and the amendments in its possession.

16.     The Agreement was originally made by and between East Liverpool City Hospital and Aetna Health Management, Inc.  Upon information and belief, Aetna is the successor-in-interest to Aetna Health Management, Inc. and its obligations under the Agreement.  Indeed, Aetna and East Liverpool City Hospital entered into a Regulatory Amendment to the Agreement effective as of September 1, 2009 and an Amendment to the Agreement effective as of September 1, 2012. (*See* Exhibit A.)  ELCH acquired substantially all of the assets and operations of East Liverpool City Hospital, including East Liverpool City Hospital's rights under the Agreement, as of February 1, 2016.  Thus, the parties to the Agreement at all times relevant to this Complaint were ELCH and Aetna.

### *Aetna's Failure and Refusal to Pay ELCH for Medical Services Provided to Aetna Members*

17.     Pursuant to the Agreement, ELCH agreed to provide emergency care and certain other covered medical services to patients enrolled in certain Aetna-administered health benefit plans (the "Aetna Members") twenty-four hours a day, seven days a week.  In return, Aetna agreed to timely and promptly process and pay claims for covered medical services provided by ELCH to Aetna Members according to the payment rates and methodology set forth in the Agreement.

18.     ELCH provided in-network emergency care, inpatient services, and other medical services to thousands of Aetna Members from January 16, 2015 through October 31, 2021 (the "Medical Services").

19.     After providing the Medical Services to Aetna Members, ELCH submitted individual claims to Aetna seeking payment for the Medical Services.

20.     Although Aetna adjudicated and paid certain of those claims, Aetna failed to fully, properly, and timely process, adjudicate, and pay ELCH for hundreds of other claims for the Medical Services as contractually required by the Agreement.

21.     In many cases, Aetna improperly denied ELCH's claims and paid nothing to ELCH for the Medical Services that ELCH provided to Aetna Members.  In many other cases, Aetna substantially underpaid ELCH for the Medical Services it provided to Aetna Members without a valid justification or excuse for doing so.

22.     By failing and refusing to pay ELCH for the Medical Services it provided to Aetna Members, ELCH breached the Agreement, which breach is continuing.

23.     ELCH attempted to resolve the individual claims that are the subject of this Complaint with Aetna before bringing this action, including by contacting Aetna's representatives and staff, pursuing Aetna's formal appeal procedures and internal dispute resolution procedures, where applicable and possible, and/or otherwise attempting to obtain a fair review of denied or underpaid claims, but those attempts were uniformly unsuccessful.

24.     The total amount that Aetna owes to ELCH for the Medical Services is at least $6,000,000, exclusive of applicable interest and penalties, the exact amount of which will be proven at trial.

25.     ELCH has continued to provide medical services to Aetna Members after October 31, 2021, as required by the Agreement, and Aetna's breaches of the Agreement are ongoing. Thus, ELCH's damages will continue to accrue after the filing of this Complaint. ELCH expressly

reserves its right to supplement this Complaint to include additional claims that have been wrongfully denied or underpaid after the filing of the Complaint, as those claims ripen.

<u>**COUNT I**</u>
**(BREACH OF CONTRACT)**

26.     ELCH incorporates by reference the allegations contained in each of the preceding paragraphs of this Complaint as if fully set forth herein.

27.     Pursuant to the Agreement, Aetna agreed to and was required to pay ELCH for the Medical Services that ELCH provided to Aetna Members according to the rates set forth in the Agreement.

28.     ELCH provided the Medical Services to Aetna Members, ELCH submitted clean claims to Aetna for those Medical Services in accordance with the Agreement, and ELCH otherwise fully or substantially performed all of its obligations under the Agreement, but Aetna failed and refused to fully and properly pay ELCH for certain of those Medical Services as required by the Agreement.

29.     Aetna breached the Agreement by failing and refusing to fully and properly pay ELCH for the Medical Services it provided to Aetna Members according to the rates set forth in the Agreement.

30.     Upon information and belief, Aetna also breached the duty of good faith and fair dealing implied in the Agreement by intentionally denying and underpaying ELCH's claims for the Medical Services it provided to Aetna Members without a legitimate or good faith basis for doing so.

31.     As a direct and proximate result of Aetna's breaches of the Agreement, ELCH has suffered damages in an amount not less than $6,000,000, exclusive of statutory penalties and interest, the exact amount to be determined at trial.

32.     ELCH is entitled to recover from Aetna all amounts owed to it under the Agreement for the Medical Services it provided to Aetna Members.

33.     ELCH is also entitled to recover statutory interest at the rate of 18% on all of its claims based on Aetna's failure to timely pay ELCH's claims as required by the Agreement and Ohio law.  *See* Ohio Rev. Code § 3901.389.

34.     ELCH is continuing to provide medical services to Aetna Members as required by the Agreement, Aetna's breaches of the Agreement are ongoing, and, thus, ELCH's damages are continuing to accrue.  ELCH seeks to recover all amounts owed to it by Aetna for all medical services provided to Aetna Members as of the date of judgment in this action, including those claims and amounts ripening or accruing after the filing of this Complaint.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff ELCH prays that judgment be entered in its favor and against Defendant Aetna for:

(a) all amounts owed under the Agreement and applicable law, as alleged herein, the exact amount to be proven at trial;

(b) statutory interest on such amount at the rate of 18% per annum;

(c) prejudgment interest, as allowed by law;

(d) attorneys' fees, as allowed by law; and

(e) such other and further relief as the Court may deem just and proper.

## DEMAND FOR JURY TRIAL

ELCH hereby demands a jury trial on all triable issues and causes of action.

Respectfully submitted this 31 day of May, 2022.

/s/ Scott Holbrook

Scott Holbrook (0073110)
Elliot Nash (0100991)
BAKER & HOSTETLER LLP
Key Tower
127 Public Square, Suite 2000
Cleveland, Ohio 44114-1214
Telephone: (216) 621-0200
Facsimile:  (216) 696-0740
sholbrook@bakerlaw.com
enash@bakerlaw.com

S. Derek Bauer (*pro hac vice application forthcoming*)
Georgia Bar No. 042537
Ian K. Byrnside (*pro hac vice application forthcoming*)
Georgia Bar No. 167521
Kevin D. Bradberry (*pro hac vice application forthcoming*)
Georgia Bar No. 532880
BAKER & HOSTETLER LLP
1170 Peachtree Street, NE, Suite 2400
Atlanta, Georgia 30309-7676
Telephone: (404) 459-0050
Facsimile: (404) 459-5734
dbauer@bakerlaw.com
ibyrnside@bakerlaw.com
kbradberry@bakerlaw.com

*Attorneys for Plaintiff*
*Prime Healthcare Foundation – East Liverpool, LLC*
*d/b/a East Liverpool City Hospital*

All-Product
HOSOHN050892

## FACILITY
## PARTICIPATION AGREEMENT

This Agreement is effective as of March 1, 1996, and is entered into by and between East Liverpool City Hospital("Facility") and Aetna Health Management, Inc. ("AHM") so that Facility may participate in various Aetna health benefits products in accordance with the terms and conditions stated below.

I.    DEFINITIONS

    1.1    MEMBER means a person eligible to receive benefits under a Plan.

    1.2    COVERED SERVICES are those services for which benefits may be provided under the terms of a Plan.

    1.3    PARTICIPATING PROVIDER means a facility, physician or other health care provider under agreement to participate in a provider network administered by AHM or by its affiliates.

    1.4    PAYOR means an entity liable for funding services or benefit payments under a Plan which uses a provider network administered by AHM or by its affiliates.  Payors may be health maintenance organizations, insurers, employers or other entities, depending on the Plan. A Payor's liability for funding benefit payments is governed by the terms of its Plan.  AHM will inform Facility of the Payor for a specific Plan on request.  AHM is not a Payor.

    1.5    PCP FEATURE means that in order to obtain maximum benefits under a Plan, the Member chooses a personal physician, known as a "Primary Care Physician" or "PCP," and is required to contact the PCP to arrange for non-emergency services in order to receive maximum benefits.

    1.6    PLAN means a health benefits plan which encourages or requires Members to use Participating Providers in order to receive maximum benefits.

II.    FACILITY'S AGREEMENTS AND OBLIGATIONS

<u>General</u>

    2.1    Facility agrees to provide Covered Services to Members without discriminating against Members on the basis of source of payment, race, color, religion, national origin, health status or disability.

JR5047                                                    1                                    07/26/93

REFER TO 2501310

2.2     Facility consents to references to its status as a Participating Provider in marketing and other materials.

2.3     Facility will maintain medical, financial and administrative records concerning services provided to Members and will keep these records for at least five years from the date the service was rendered. Facility agrees that AHM or Payors, their authorized representatives, and duly authorized third parties such as government or regulatory agencies, will have the right to inspect, review and make copies of records directly related to services rendered to Members, upon reasonable notice, during regular business hours. Facility further agrees to obtain any necessary releases from Members with respect to their records and the information contained therein.

2.4     Facility agrees not to delegate its duties under this Agreement without the prior written consent of AHM.

2.5     Facility agrees to participate in the Utilization Management program ("UM program") applicable to each Plan, including on-site review programs. Failure to comply with the applicable UM program may result in reductions in payment or in termination of this Agreement. Facility agrees to cooperate actively with the applicable on-site review program, including granting access to records and facilitating interviews with appropriate Facility staff and patients, not just for Members but for all patients under an Aetna on-site review program.

2.6     Facility agrees to comply with and participate in any applicable appeal/grievance procedure, including any applicable Member grievance system.

<u>Billing and Compensation</u>

2.7     Facility agrees to accept the amounts provided for in Attachment A as payment in full for Covered Services. Facility agrees that if Facility reduces the amount Facility will accept as payment in full for Covered Services, e.g. through forgiveness of co-insurance, copayments or deductibles, Facility will bill Payor at the reduced amount and will accept payment from Payor based on the reduced amount.

2.8     If Facility's failure to participate in the UM program, or if Facility's failure to submit a timely claim, results in a denial or reduction of payment from Payor, Facility agrees not to charge Members for the resulting unpaid charges. Facility agrees not to charge Members for services which UM review indicates may not be covered unless a) the Member has been informed prior to receiving the services that the services may not be covered under Payor's Plan and b) the Member has agreed in writing to pay for the services. Except for the preceding two sentences, nothing in this Agreement is intended to restrict Facility's right to charge Members for non-covered services.

2.9     Facility agrees to file claims for Covered Services on behalf of Members. Facility also agrees to obtain assignment of benefits when appropriate.

JR5047                                    2                          07/26/93

2.10    Facility agrees to submit an itemized claim for Covered Services using the UB-92 billing form (or a billing form containing equivalent information) within 90 days from the date of service, or, in those instances in which the Payor is secondary, 90 days from the date notice of payment decision is received from the primary payor.  Payors will not be obligated to pay claims which are submitted after that time.

2.11    Facility agrees to cooperate in claims payment administration including, but not limited to, coordination of benefits, subrogation, checking coverage, verification of coverage, prior certification and record keeping procedures.  If Payor pays Facility more than is provided for in Payor's Plan, or if Payor pays Facility on the basis of an assignment of benefits which is successfully contested, Facility agrees to return such amounts to Payor or to Payor's agent.

2.12    If Payor is a HMO, Facility agrees that in no event, including but not limited to non-payment by the HMO, HMO insolvency or breach by AHM of this Agreement, shall Facility bill, charge, collect a deposit from, seek compensation, remuneration or reimbursement from, or have any recourse against HMO's Members for Covered Services.  This provision does not prohibit collection of supplemental charges or copayments on HMO's behalf made in accordance with HMO's Plan.  Facility further agrees that this paragraph shall be construed to be for the benefit of HMO's Members and that this paragraph supersedes any oral or written contrary agreement now existing or hereafter entered into between Facility and HMO's Members or persons acting on such Members' behalf.

<u>Credentialing</u>

2.13    Facility agrees to provide the information required under AHM's credentialing program and quality management programs ("C/QM programs"); Facility acknowledges that Facility's participation pursuant to this Agreement may be terminated or suspended pursuant to these programs.  Facility represents and warrants that the information provided in accordance with the C/QM programs, including but not limited to the information provided in Facility's application, continues to be true and complete.  Facility agrees to notify AHM immediately of any changes in that information.

2.14    Facility shall maintain comprehensive general and professional liability insurance in adequate amounts ("adequate" as determined by AHM), shall provide documentary evidence of such coverage to AHM upon request, and shall notify AHM immediately of any change in coverage.

2.15    Facility represents and warrants that it is (1) in full compliance with all applicable laws, including licensing laws, (2) accredited by the Joint Commission on Accreditation of Healthcare Organizations and (3) in good standing under the Federal Medicare Program.  Facility shall notify AHM immediately of any action to suspend, revoke or restrict its license, accreditation or Federal Medicare Program good standing.

2.16   Facility agrees to notify AHM of any suits or claims against Facility involving Members within five (5) working days after Facility learns of them.  Facility shall provide to AHM and, if the suit or claim involves a Member to the applicable Payor, any information regarding such claims or suits which may be reasonably requested.

## III.   AHM AGREEMENTS AND OBLIGATIONS

3.1   AHM agrees to provide descriptions of Aetna health benefits products to Facility.

3.2   AHM shall arrange for distribution of identification cards to Members; each card will include a toll-free number that Facility may use during normal business hours to check eligibility for coverage and to obtain general coverage information.

3.3   AHM agrees to inform Facility of the UM procedures and the billing procedures for each Plan.

3.4   AHM shall implement a means for Facility to identify other Participating Providers.

3.5   AHM will instruct Payor to pay its portion of Facility's bills for Covered Services within 30 days of receipt when such bills are accurate, complete, in the agreed-upon form, when Payor's Plan is primary and when the bills do not require any further investigation.

## IV.   TERM AND TERMINATION

4.1   <u>Term.</u>  This Agreement shall continue in effect until terminated.

4.2   <u>Termination.</u>  This Agreement may be terminated:

a)   without cause by either party upon 90 days prior written notice to the other.

b)   for material breach if 30 days prior written notice specifying the material breach has been given to the breaching party and if at the end of the thirty days the dispute remains unresolved.  This Agreement may then be terminated immediately by written notice to the breaching party.

c)   upon notice by AHM pursuant to AHM's C/QM programs.

4.3     Obligations Following Termination. Facility shall continue to provide Covered Services in accordance with this Agreement to Members receiving active treatment at the time of termination until those services are completed or until AHM makes reasonable and medically appropriate arrangements to have another health care provider provide the services. Facility shall also continue, at AHM's election, to abide by the terms of this Agreement with respect to specified Plans until the next Plan renewal date or 12 months, whichever comes first. The terms of this Agreement shall continue to apply following termination to Covered Services provided under the preceding two sentences and to Covered Services provided prior to termination.

## V.     MUTUAL OBLIGATIONS

5.1     Amendments. This Agreement may be amended by either party upon written notice to the other if necessary in order to comply with applicable law.

5.2     Independent Contractors. Facility, AHM and Payors are independent contractors and are not responsible for the acts or omissions of each other.

5.3     Dispute Resolution. If a dispute should arise with respect to the terms of this Agreement, the parties agree to attempt to resolve the matter through informal discussion, or, if informal discussion does not resolve the matter, through mediation. When pursuing mediation, the parties shall attempt to take no longer than 30 days to agree upon a mediator.

5.4     Notice. Any written notice required by this Agreement shall be sent by certified mail, return receipt requested, to the address given below or to such later address as may be specified in writing. Any prior written notice periods required by this Agreement shall be deemed to start on the day that written notice was mailed.

5.5     Trademarks. Neither party may use the other party's trademarks or servicemarks without the express written consent of the other party. Neither party may use any trademark or servicemark of any Payor without the express written consent of that Payor.

5.6     Waiver of Breach. The waiver of any breach of this Agreement will not be deemed to waive any other breach.

**5.7** <u>Entire Agreement.</u> This Agreement, including its attachments, constitutes the entire agreement between the parties with respect to the matters addressed herein and supersedes all prior oral and written understandings between the parties. If the terms of this Agreement conflict with the terms of any Attachment, the terms of the Attachment shall prevail.

FACILITY

By: _Mary Ellen Kline_

Printed Name: MARY ELLEN KLINK

Title: VICE PRESIDENT, FINANCE

Date: January 30, 1996

Tax I.D.: ███████████

Address for notices:

FACILITY:

AETNA HEALTH MANAGEMENT, INC.

By: _Donna Bell_

Printed Name: Donna Bell

Title: Network Director

Date: February 12, 1996

AHM:

Aetna Health Management, Inc.
Contracts Administration
1000 Middle Street, MC2S
Middletown, CT 06457

with a copy to:

Aetna Health Plans
3690 Orange Place, Suite 200
Cleveland, OH 44122

Address of Facility if different from the address for notices:

### FACILITY PARTICIPATION AGREEMENT
### ATTACHMENT A
Compensation Schedule
Per Diem

I.   Reimbursement Rate

Facility shall accept reimbursement for Covered Services rendered to Members
("Reimbursement Rate") in accordance with the following:

A.  For inpatient services, the Reimbursement Rate shall be ████████████████

.

B.  For emergency room and outpatient services, the Reimbursement Rate shall be
████████████████████████████████.

C.  The categories of services and applicable per diem rates, case rates or percentage of
published charges are as follows:



II.  <u>Compensation: Payor</u>

The compensation per claim payable by Payor to Facility, subject to the terms of this Agreement and the applicable Plan, shall be equal to:

A.  The Reimbursement Rate

B.  <u>Minus</u> any applicable copayments, co-insurance and/or deductibles

III.  <u>Compensation: Member</u>

Facility agrees that Facility will not bill Members for amounts in excess of the deductibles, copayments and/or co-insurance provided for in Member's Plan. Co-insurance amounts billed to Members will be based on the percentage of the lesser of (a) the Reimbursement Rate set forth in Section I or (b) Facility's usual and customary charge [Facility's usual and customary charge for this purpose will be calculated as of the date of admission for inpatient services and as of the date of service delivery for emergency and outpatient services].

East Liverpool City Hospital
Effective Date: 10/01/2009

## REGULATORY AMENDMENT BETWEEN AETNA AND PROVIDER

This Regulatory Amendment, by and between Aetna Health Inc., a Pennsylvania corporation, on behalf of itself and its Affiliates, (hereinafter "Company") and East Liverpool City Hospital (hereinafter as "Provider"), is effective as of October 1, 2009.

The provisions of this Regulatory Amendment, when applicable, supersedes any language addressing the same issues in the existing Agreements, or supplies language where Agreements are silent on the issues addressed herein. Because various Agreements are being amended, the numbering of which may not be the same, the changes are addressed only by section title.

1. Company Obligation to Pay Claims.
   In accordance with the requirements of O.R.C. Section 3963.03(A)(4), the contracting entity or payer responsible for processing payment for Covered Services due Provider shall be available on the provider secure website at www.aetna.com.

2. Policies.
   In accordance with the requirements of O.R.C. Section 3963.03(D), Company shall provide applicable policies, procedures, or guidelines associated with utilization management, quality improvement, or similar program upon request by Provider within fourteen (14) days of such request.

3. Provider Dispute Resolution.
   In accordance with the requirements of O.R.C. Section 3963.03(A)(5), Company's internal mechanism for resolving disputes is available on the provider secure website at www.aetna.com.

4. Arbitration.
   The Arbitration section of Provider's Agreement is subject to and modified as necessary to comply with O.R.C. Section 3963.02(F)(1)-(3).

5. Amendments.
   In accordance with the requirements of O.R.C. Section 3963.04(A)(1)-(4) and the Notice section of Provider's Agreement, Company shall: (i) provide at least fifteen (15) days notice prior to the effective date if the amendment to this Agreement is a non-material change; and (ii) provide at least ninety (90) days notices prior to the effective date if the amendment to this Agreement is a Material Change. Such notices shall be entitled "Notice of Material Amendment to Contract." If within fifteen (15) days after receipt of such notice, Provider objects in writing to the material amendment, and there is no resolution of the objection, either Party may terminate the Agreement in accordance with the Termination without Cause section Provider's of Agreement no later than sixty (60) days prior to the effective date of the material amendment. If Provider does not object to the Material Change the change shall be effective as specified in the notice.

6. Miscellaneous.
   As required by O.R.C. Section 3963.03(A)(6), the schedules, exhibits, attachments or addenda attached to this Amendment include the following:

| Title | Subject |
|---|---|
| (a) Letter | Letter |
| (b) Regulatory Amendment | HB 125 |
| (c) Summary Disclosure Form | HB 125 |

02501310

Oct-16-2009 12:37 PM Aetna 312-◯3050                                    6/53

East Liverpool City Hospital
Effective Date: 10/01/2009

7.  Summary Disclosure Form.
    In accordance with the requirements of O.R.C. Section 3963.03(B)(1)-(4), the Summary Disclosure Form attached
    to this Amendment, is expressly incorporated into this Agreement.

To the extent any provision of this Amendment is inconsistent with any applicable provision in the Agreement, the terms
of the Amendment shall control.

IN WITNESS WHEREOF, the undersigned parties have executed this Agreement by their duly authorized officers,
intending to be legally bound hereby.

COMPANY

By: _____

Printed Name: JAY PIMM

Title: VP OF NETWORK, NC REGION

Date: 9\10\09

East Liverpool City Hospital
Effective Date: 10/01/2009

### SUMMARY DISCLOSURE FORM

(1) Compensation terms

(b) Please refer to the Services and Compensation Schedule associated with your Agreement. If you are a M.D. or
D.O. and you can view your current fee schedule online, log in to our secure provider website via NaviNet®. Visit
www.aetna.com, select "Health Care Professionals" and "Medical" and "Log In." Once logged in, select "Claims"
and then "Fee Schedule." If you are not a M.D. or D.O., or do not have the option to view your fee schedule
online, please fax your request, along with the desired CPT codes, to our Provider Service Center at 1-859-455-
8650. Updated fee schedules will be available online on the effective date of the change. If you need access to
your updated fee schedule before they become available online, please fax your request, along with the desired
CPT codes, no more than 90 days in advance of the effective date to 1-859-455-8650.

(c) The Aetna Code Editing Tool may be accessed from our secure provider website. Visit www.aetna.com, select
"Health Care Professionals" then "Medical" and "Log In." Once logged in, under "Plan Central," select "Aetna
Health Plan." Then select "Claims" then "Code Editing Tool." If you have additional questions after reviewing
the information available on our website, please call our Provider Service Center at 1-800-624-0756 for HMO-
based plans and 1-888-632-3862 for indemnity and PPO-based plans.

(d) Edits on payment or compensation include claims payment criteria and methodologies, such as Medicare Program
Guidelines, Medicare's Standard Correct Coding Initiatives, Ingenix, DMERC, Medicare Budget Neutrality
Adjusters and Geographic Practice Cost Indices (GPCIs). These edits may increase or reduce payments payable to
the provider. Aetna utilizes McKesson Clear Claim Connection and Aetna Specific Code Logic.

(e) Information in (c) and (d) is not required if information in (b) is provided.

(2) List of products or networks covered by this contract. Additionally, please refer to the Product Participation Schedule
associated with your Agreement.
[ ] HMO
[x] Commercial plan other than HMO
[ ] Medicare
[ ] Medicaid
[ ] Workers' Compensation
[ ] Other _____

(3) Please refer to Section 6.1 Term, of your Agreement. Term of this contract:
[x] Evergreen
[ ] Other _____

(4) Contracting entity or payers responsible for processing payment are:

Aetna
PO Box 981106
El Paso, TX 79998-1106

SRC, an Aetna Company
PO Box 23759
Columbia, SC 29224-3759

OHP Summary Disclosure Form                    Page 1 of 2                         Printed  9/10/09

02501310                                                                           V 3 0 6 09

Oct-16-2009 12:37 PM Aetna 312- 3050                                                      8/53

East Liverpool City Hospital
Effective Date: 10/01/2009

Aetna Student Health
PO Box 15708
Boston, MA 02215-0014

Aetna Medicare
PO Box 981107
El Paso, TX 79998-1107

A list of TPA payers and their addresses is available on our secure provider website. Visit www.aetna.com, select "Health Care Professionals" then "Medical" and "Log In." Once logged in, select "Education," "Reference Tools," "Products, Programs, & Plans" then "Aetna Signature Administrator Quick Overview."

Aetna Workers' Compensation Access provides repricing services to payers. Providers should contact the injured worker's employer for information regarding the applicable payer. The payer is responsible for the payment of claims; AWCA is never the payer. Providers should call the payer's phone number listed on the Explanation of Review (EOR) or Explanation of Benefits (EOB). A list of payers, in general, is contained on the AWCA secure website at http://awca.aetna.com. Select "Participating Providers" then "Ohio" from the drop down box under the "Select a State" option on the left side. Then click on the link for "carrier groups, managed care and employers."

(5) Please refer to Section 8.2 Provider Dispute Resolution, of your Agreement. Internal mechanism for resolving disputes regarding contract terms is available on Aetna's public website at www.aetna.com. Select "Health Care Professionals," "Medical" then "Dispute Process" Under Shortcuts.

(6) Schedules, exhibits, attachments or addenda to contract include the following:

| Title | Subject |
|---|---|
| (a) Letter | Letter |
| (b) Regulatory Amendment | HB 125 |
| (c) Summary Disclosure Form | HB 125 |

(7) If you need additional assistance after reviewing the information available on our website, please call our Provider Service Center at 1-800-624-0756 for HMO-based plans or 1-888-632-3862 for indemnity and PPO-based plans.

## IMPORTANT INFORMATION - PLEASE READ CAREFULLY

The information provided in this Summary Disclosure Form is a guide to the attached Health Care Contract as defined in section 3963.01(G) of the Ohio Revised Code. The terms and conditions of the attached Health Care Contract constitute the contract rights of the parties.

Reading this Summary Disclosure Form is not a substitute for reading the entire Health Care Contract. When you sign the Health Care Contract, you will be bound by its terms and conditions. These terms and conditions may be amended over time pursuant to section 3963.04 of the Ohio Revised Code. You are encouraged to read any proposed amendments that are sent to you after execution of the Health Care Contract.

Nothing in this Summary Disclosure Form creates any additional rights or causes of action in favor of either party.

East Liverpool City Hospital
Effective Date: 09/01/2012

## AMENDMENT

This Amendment is made as of September 1, 2012 (Effective Date), between Aetna Health Inc., a Pennsylvania corporation, on behalf of itself and its Affiliates (hereinafter referred to as "Company") and East Liverpool City Hospital, (hereinafter referred to as "Provider").

**WHEREAS**, the parties have entered into a Hospital Services Agreement ("Agreement") to provide health care services to Members;

**WHEREAS**, the parties wish to amend the Agreement to revise the Hospital Services & Compensation Schedule as provided herein;

**NOW, THEREFORE**, in consideration of the mutual promises and undertakings contained herein, the parties agree to be legally bound as follows:

1. The Hospital Services & Compensation Schedule of the Agreement is hereby deleted in its entirety and replaced with the attached.:

2. All other terms and provisions of the Agreement not amended hereby shall remain in full force and effect. In the event of any inconsistency between the terms of this Amendment and the Agreement, the terms of this Amendment shall govern and control.

**IN WITNESS WHEREOF**, the parties have caused this Amendment to be executed below.

**Accepted By:**

**PROVIDER**

By: _Kyle Johnson_ _____
  Kyle Johnson (Jul 16, 2012)

Printed Name: Kyle Johnson

Title: VP of Finance / CFO

Date: Jul 16, 2012

FEDERAL TAX I.D. NUMBER: ███████

**COMPANY**

By: _Michel_ _____
  Michel (Aug 10, 2012)

Printed Name: Michelle M. Daniels

Title: Local Network Lead

Date: Aug 10, 2012    **August 17, 2012**

_Michelle Mathieu_ _____
Michelle Mathieu (Aug 17, 2012)

East Liverpool City Hospital
Effective Date: 09/01/2012

## MEDICARE PROVIDER AMENDMENT

**Provider agrees** to comply with all applicable Medicare laws, rules and regulations, including, without limitation, instructions issued by the Centers for Medicare and Medicaid Services ("CMS"). Specifically, the following provisions are now part of the Agreement:

1. Provider agrees to provide Covered Services to those persons who meet all eligibility requirements of the federal Medicare program and who have enrolled in Company's Medicare Plans ("Medicare Members").

2. Provider agrees to comply with all Medicare laws, rules and regulations, as well as Company requirements designed to ensure Company's compliance with such laws, rules and regulations, including, without limitation, laws, rules and regulations relating to the protection of Medicare Member privacy and confidentiality and the accuracy of Medicare Member health records. Provider agrees that all services and other activities performed by Provider under the Agreement will be consistent and comply with Company's obligations under its contract(s) with the Centers for Medicare and Medicaid Services (CMS) to offer Medicare Plans. Upon request, Provider shall immediately provide to Company any information required by Company to meet its reporting obligations to CMS, including, where applicable, physician incentive plan information. Provider agrees to allow CMS and Company to monitor Provider's performance under this Agreement on an ongoing basis, in accordance with Medicare laws, rules and regulations.

3. Provider acknowledges and agrees that all provisions of this Amendment and of the Agreement shall apply equally to any employees, independent contractors and subcontractors of Provider who provide or may provide Covered Services to Medicare Members, and Provider represents and warrants that Provider shall take all steps necessary to cause such employees, independent contractors and subcontractors to comply with this Amendment and the Agreement and all applicable laws and regulations, and perform all requirements applicable to Medicare programs.

4. Company agrees to pay Provider for Covered Services rendered to Medicare Members within forty-five (45) calendar days of actual receipt by Company of a Clean Claim. Payments for non-capitated Covered Services rendered to Medicare Members are subject to any and all valid and applicable Medicare laws related to claims payment. With respect to Medicare Members, Provider acknowledges that compensation under the Agreement for such Members constitutes receipt of federal funds.

   Provider shall pay on a timely basis all employees, independent contractors and subcontractors who render Covered Services to Medicare Members for which Provider is financially responsible pursuant to the Agreement.

5. Provider acknowledges and agrees that Medicare Members who are also enrolled in a State Medicaid plan ("Dual Eligible Members") are not responsible for paying to Provider any Copayments, Coinsurance or Deductibles for Medicare Part A and Part B services ("Cost Sharing Amounts") when the State Medicaid plan is responsible for paying such Cost Sharing Amounts. Provider further agrees that they will not collect Cost Sharing Amounts from Dual Eligible Members when the State is responsible for paying such Cost Sharing Amounts, and will, instead, either accept the Company's payment for Covered Services as payment in full for Covered Services and applicable Cost Sharing Amounts, or bill the applicable State Medicaid plan for the appropriate Cost Sharing Amounts owed by the State Medicaid plan.

6. Provider agrees to cooperate with and participate in internal and external review procedures necessary to process Medicare appeals and grievances.

7. For purposes of this Section 7, "risk adjustment data" shall have the meaning set forth in 42 C.F.R. Section 422.310(a), as may be amended from time to time. Company is required to obtain risk adjustment data from Provider for Medicare Members, and Provider agrees to provide complete and accurate risk adjustment data to Company for Medicare Members that conforms to all standards and requirements set

East Liverpool City Hospital
Effective Date: 09/01/2012

forth in applicable laws, rules and regulations and/or CMS instructions that apply to risk adjustment data. Provider certifies, based on best knowledge, information and belief, that any risk adjustment data that Provider submits to Company for Medicare Members is accurate, complete and truthful. Provider agrees to immediately notify Company if any risk adjustment data that was submitted to Company for Medicare Members is erroneous, and follow procedures established by Company to correct erroneous risk adjustment data to ensure Company's compliance with applicable laws, rules and regulations and CMS instructions.

Provider further agrees to maintain accurate, legible and complete medical record documentation for all risk adjustment data submitted to Company for Medicare Members in a format that meets all standards and requirements set forth in applicable laws, rules, regulations and/or CMS instructions, and allows any federal governmental authorities with jurisdiction or their designees ("Government Officials") to: (1) confirm that the appropriate diagnoses codes and level of specificity are documented ; (2) verify the date of service is documented and within the risk adjustment data collection period; and (3) confirm that the appropriate provider's signature and credentials are present ("Medical Records").

Provider agrees to provide Company and Government Officials, or their designees, with medical records and any other information or documentation required by Government Officials for the validation of risk adjustment data ("Audit Data"). Provider agrees to provide Company with Audit Data within the timeframe established by Company to ensure Company's compliance with deadlines imposed by Government Officials for the submission of Audit Data. In the event that CMS conducts a review that includes the validation of risk adjustment data submitted by Provider, Company will submit to Provider a copy of the CMS written notice of such review, along with a written request from Company for Audit Data.

8. With respect to any Plan offered by Company to Medicare Members, Provider agrees to provide Company and federal, state and local governmental authorities having jurisdiction, or their designees, upon request, access to all books, records and other papers (including, but not limited to, medical and financial records and contracts) and information relating to the Agreement and to those Covered Services rendered by Provider and its employees, independent contractors and subcontractors to Medicare Members ("Information and Records"), and that this right of inspection, evaluation and audit will continue for the longer of: (i) a period of ten (10) years from the end of the contract period of any government contract of Company, (ii) the date that the U.S. Department of Health and Human Services (HHS), the Comptroller General or their designees complete an audit, or (iii) the period required under applicable laws, rules or regulations. With respect to any Plan offered by Company to Medicare Members, Provider also agrees to maintain Information and Records for the longer of: (i) ten (10) years from the end of the contract period of any government contract of Company, (ii) the date HHS, the Comptroller General or their designees complete an audit, or (iii) the period required by applicable laws, rules or regulations. This Section 7 shall survive the termination of the Agreement, regardless of the cause of the termination.

9. Provider agrees to comply with the following, as applicable and as amended from time to time: Title VI of the Civil Rights Act of 1964, the Rehabilitation Act of 1973, the Age Discrimination Act of 1975, HIPAA administrative simplification rules at 45 C.F.R. parts 160, 162, and 164, the Americans with Disabilities Act, Federal laws and regulations designed to prevent or ameliorate fraud, waste, and abuse, including, but not limited to, applicable provisions of Federal criminal law, the False Claims Act (31 U.S.C. §§ 3729 *et. seq.*), and the anti-kickback statute (section 1128B(b) of the Social Security Act), and any other laws applicable to recipients of Federal funds.

10. In no event, including without limitation, non-payment by Company, insolvency of Company or breach of the Agreement or this Amendment, shall Provider bill, charge, collect a deposit from, seek remuneration or reimbursement from, or have any recourse against a Medicare Member or persons (other than the Company) acting on a Medicare Member's behalf for services covered by the Agreement. This provision shall not prohibit collection of deductibles, coinsurance or copayments from Medicare Members in accordance with the terms of the Medicare Member's agreement with Company.

East Liverpool City Hospital
Effective Date:  09/01/2012

Provider further agrees that: (a) this provision shall survive termination of the Agreement and this Amendment regardless of the cause giving rise to termination and shall be construed for the benefit of Medicare Members, and (b) this provision supersedes any oral or written agreement to the contrary now existing or hereafter entered into between Provider and a Medicare Member or persons acting on a Medicare Member's behalf.

No modification of this provision shall be effective without the prior written approval of the appropriate state and/or federal regulatory entities.

11. In the event of Company's insolvency or other cessation of operations, Provider shall continue to provide Covered Services to (i) Medicare Members through the period for which premium has been paid to Company, and (ii) those Medicare Members who are confined in an inpatient facility on the date of insolvency or other cessation of operations until medically appropriate discharge.

12. Provider acknowledges that Company may only delegate activities or functions to Provider in a manner consistent with Medicare laws, rules and regulations.  Provider acknowledges and agrees that if any of Company's activities or responsibilities under Company's contract with CMS to offer Medicare Plans is delegated by Company to Provider, such activity or responsibility may be revoked if CMS or Company determines that Provider has not performed satisfactorily.

Capitalized terms not otherwise defined herein shall have the meaning given such terms in the Agreement.  All terms of the Agreement not amended herein remain in full force and effect.  If the terms of this Amendment conflict with any term of Agreement, the terms of this Amendment shall prevail.

East Liverpool City Hospital
Effective Date: 09/01/2012

## PRODUCT PARTICIPATION SCHEDULE

Participation under this Hospital Services Agreement will include the Aetna Products indicated below. Compensation for these products will be according to the Services and Compensation Schedule attached to this Agreement.

- <u>Gated Health Benefit Product</u> – Commercial health benefit plan which contains a Primary Care Physician as a component of the Plan design regardless of whether (i) selection of a Primary Care Physician is mandatory or voluntary under the terms of the Plan; or, (ii) an individual Member has selected a Primary Care Physician. Gated Health Benefit Products include but are not limited to: *HMO, QPOS, Elect Choice, Managed Choice POS, Aetna Choice POS II, and Aetna Select.*

- <u>Non-Gated Health Benefit Product</u> – Commercial health benefit plan which does not allow for the designation and/or use of a Primary Care Physician in the administration of the benefit Plan. Non-Gated Health Benefit Products include but are not limited to: *Open Choice PPO and National Advantage.*

  *Many member ID cards include the National Advantage logo (NAP) in conjunction with Gated and non-Gated Health Benefit Products. In those circumstances the rate applicable to other product (not NAP) on the ID card will apply.*

- <u>Government Programs</u> – All plans offered by Company under any government contract serving Medicare beneficiaries. Government Programs include, but are not limited to: all Aetna Medicare Advantage HMO, PPO, and POS.

  Government Programs excludes Medicaid program offered by Company.

  *Compensation for Government Programs may vary based upon the applicable products as specified in the Service and Compensation Schedule.*

- <u>Non-Health Benefit Products</u> – Including but not limited to: *Aetna Workers' Comp Access.*

East Liverpool City Hospital
Effective Date:  09/01/2012

**MEDICARE**
**HOSPITAL SERVICES**
**AND**
**COMPENSATION SCHEDULE**



Medicare Hospital Service and Comp
(Allowable)  (10/08)
02501310/5  03437392/1

Page 6 of 12

Printed:  7/13/12

V.13.0.04.12

East Liverpool City Hospital
Effective Date:  09/01/2012

**COMPENSATION TERMS AND CONDITIONS**:

East Liverpool City Hospital
Effective Date:  09/01/2012



Medicare Hospital Service and Comp
(Allowable)  (10/08)
02501310/5  03437392/1

Page 8 of 12

Printed:  7/13/12

V.13.0.04.12

East Liverpool City Hospital
Effective Date:  09/01/2012



Medicare Hospital Service and Comp
(Allowable)  (10/08)
02501310/5  03437392/1

Page 9 of 12

Printed:  7/13/12

V.13.0.04.12

East Liverpool City Hospital
Effective Date:  09/01/2012



East Liverpool City Hospital
Effective Date:  09/01/2012

Medicare Hospital Service and Comp
(Allowable)  (10/08)
02501310/5  03437392/1

Page 11 of 12

Printed:  7/13/12

V.13.0.04.12

East Liverpool City Hospital
Effective Date:  09/01/2012

**Service and Pay to (Remittance) Location Form**

Listed below is each participating provider* with the corresponding physical service location, pay to (remittance) address and telephone numbers:

**\*Upon written notice from Provider, Company may agree to add new or relocating facilities, locations or providers to existing Agreement upon completion of applicable credentialing and satisfaction of all other requirements of Company.  Other demographic information may be revised upon written notice from Provider.**

**Provider Name:  <u>EAST LIVERPOOL CITY HOSPITAL</u>**

| Service Location Name | | Pay to (Remittance) Name | |
|---|---|---|---|
| | | Electronic Pay to (Remittance) Name <br> *(as it appears on the submission)* | |
| Street | 425 WEST 5TH STREET | Address | 425 WEST 5TH STREET |
| Suite # | | Suite # | |
| City | EAST LIVERPOOL | City | EAST LIVERPOOL |
| State, Zip | OH  43920 | State, Zip | OH  43920 |
| Phone # | (216) 385-7200 | Phone # | (216) 385-7200 |
| Fax # | | Fax # | |
| Email Address | | Email Address | |
| Tax ID # | ██████ | NPI: 1659375673 | NPI Type:  2 |

Company Use Only:     PIN #: <u>6460635</u>              PVN #: <u>0068006</u>

| Service Location Name | | Pay to (Remittance) Name | |
|---|---|---|---|
| | | Electronic Pay to (Remittance) Name <br> *(as it appears on the submission)* | |
| Street | | Address | |
| Suite # | | Suite # | |
| City | | City | |
| State, Zip | | State, Zip | |
| Phone # | | Phone # | |
| Fax # | | Fax # | |
| Email Address | | Email Address | |
| Tax ID # | | NPI: | NPI Type: |

Company Use Only:     PIN # _____              PVN # _____



Common Pleas Court of Columbiana County, Ohio

**DESIGNATION FORM TO BE USED TO INDICATE THE CLASSIFICATION OF THE CAUSE**

Prime Healthcare Foundation – East Liverpool, LLC d
**Plaintiff**
Vs.
Aetna Health Inc., on behalf of itself and its Affiliate
**Defendant**

Case Number: N/A 2022CV334

SCOTT WASHAM

Has this case been previously filed and dismissed? Yes ☐ No ☒
Case #: N/A                    Judge: N/A

Is this case related to any new cases now pending or previously filed? Yes ☐ No ☒
Case #: N/A                    Judge: N/A

---

**CIVIL CLASSIFICATIONS:** *Place an (X) In ONE Classification Only.*

**Professional Torts:**
☐ Medical Malpractice
☐ Dental Malpractice
☐ Optometric Malpractice
☐ Chiropractic Malpractice
☐ Legal Malpractice
☐ Other Malpractice

**Product Liability:**
☐ Product Liability

**Other Torts:**
☐ Motor Vehicle Accident
☐ Consumer Action
☐ Misc. Tort

**Workers Compensation:**
☐ Workers Compensation
☐ Workers Comp. Asbestos

**Foreclosures:**
☐ Foreclosure

**Commercial Docket:**
☐ Commercial Docket
☐ Commercial Docket with Foreclosure

**Administrative Appeals:**
☐ Employment Services
☐ Other

**Other Civil:**
☐ Replevin/Attachment
☒ Business Contract
☐ Real Estate Contract
☐ Consumer Debt
☐ Cognovit
☐ Other Contracts
☐ Foreign Judgment
☐ Stalking Civil Protection Order
☐ Misc. Other
☐ Petition to Contest Adam Walsh Act
☐ Certificate of Qualification for Employment

**Amount of Controversy:**
☒ None Stated
☐ Less than $25,000
☐ Prayer Amount _____

**Parties have previously attempted one of the following prior to filing:**
☐ Arbitration
☐ Early Neutral Evaluation
☐ Mediation
☒ None

---

*I certify that to the best of my knowledge the within case is not related to any now pending or previously filed, expect as noted above.*

Baker & Hostetler LLP
**Firm Name (Print or type)**

127 Public Square, Suite 2000
**Street Address**

Cleveland, Ohio, 44114
**City, State, Zip**

(216) 621-0200
**Phone**

Scott Holbrook
**Attorney of Record (Print or Type)**

0073110
**Supreme Court #**

sholbrook@bakerlaw.com
**Address Email Address**

/s/ Scott Holbrook
**Signature**

---

**FILED DATE: 05/31/2022 03:16 PM    ANTHONY J. DATTILIO, COLUMBIANA COUNTY CLERK OF COURTS**

## IN THE COURT OF COMMON PLEAS
## COLUMBIANA COUNTY, OHIO

Prime Healthcare Foundation – East     )
Liverpool, LLC d/b/a East Liverpool City )   CASE NO. CV- 2022 CV 234
Hospital,                               )
425 West Fifth Street                   )      SCOTT WASHAM
East Liverpool, OH 43920                )
                                        )   JUDGE _____
                                        )
                    Plaintiff,          )
                                        )
        vs.                             )   **WRITTEN INSTRUCTIONS FOR**
                                        )   **SERVICE**
Aetna Health Inc., on behalf of itself and )
its Affiliates,                         )
CT Corporation System                   )
4400 Easton Commons Way, Suite 125      )
Columbus, OH 43219                      )
                                        )
                    Defendant.          )
                                        )

Plaintiff requests that the Clerk of Courts please serve a copy of the Complaint upon

Defendant Aetna Health Inc., at its captioned address by certified mail.

Respectfully submitted,

/s/ Scott Holbrook
Scott Holbrook (0073110)
Elliot Nash (0100991)
BAKER & HOSTETLER LLP
Key Tower
127 Public Square, Suite 2000
Cleveland, Ohio 44114-1214
Telephone: (216) 621-0200
Facsimile: (216) 696-0740
sholbrook@bakerlaw.com
enash@bakerlaw.com

S. Derek Bauer (*pro hac vice application forthcoming*)
Georgia Bar No. 042537
Ian K. Byrnside (*pro hac vice application forthcoming*)
Georgia Bar No. 167521
Kevin D. Bradberry (*pro hac vice application forthcoming*)
Georgia Bar No. 532880
BAKER & HOSTETLER LLP
1170 Peachtree Street, NE, Suite 2400
Atlanta, Georgia 30309-7676
Telephone: (404) 459-0050
Facsimile: (404) 459-5734
dbauer@bakerlaw.com
ibyrnside@bakerlaw.com
kbradberry@bakerlaw.com

*Attorneys for Plaintiff*
*Prime Healthcare Foundation – East Liverpool, LLC d/b/a East Liverpool City Hospital*

# U.S. Postal Service®
# CERTIFIED MAIL® RECEIPT
*Domestic Mail Only*

## USPS® ARTICLE NUMBER

9414 7266 9904 2184 2777 23

| | | |
|---|---|---|
| Certified Mail Fee | $ | |
| Return Receipt (Hardcopy) | $ | |
| Return Receipt (Electronic) | $ | |
| Certified Mail Restricted Delivery | $ | |
| Postage | $ | |
| Total Postage and Fees | $ 8 56 | |

Postmark Here

FILED

COLUMBIANA COUN
COURT OF COMMON

JUN . 2 20

JUN 02 2022

ANTHONY J. [
CLERK

**Sent to:**

AETNA HEALTH INC
ON BEHALD OF ITSELF AND IT
AFFILIATES
4400 EASTON COMMONS WAY, SUITE 125
COLUMBUS, OH 43219

## Reference Information

COLUMBIANA COMMON PLEAS

2022 CV 00234



# WALZ
## Certified Mail Automation

Walz Certified Mailer™ form #45663
Version E0121

Used with WCM Plus™ software

Reorder forms online at:
# www.walzpostal.com

or contact WALZ at:
Email: sales@walzpostal.com
Toll Free: (800) 381-3811

## For a better, faster and easier way!

Return Receipt (Form 3811) Barcode

9590 9266 9904 2184 2777 26

. Article Addressed to:

AETNA HEALTH INC
ON BEHALD OF ITSELF AND ITS AFFILIATES
4400 EASTON COMMONS WAY, SUITE 125
COLUMBUS, OH   43219

2022 CV 00234

. Certified Mail (Form 3800) Article Number

9414 7266 9904 2184 2777 23

COMPLETE THIS SECTION ON DELIVERY.

A. Signature
X  CT  Corp
☐ Agent
☐ Address

B. Received by (Printed Name)
C.T. Corp

C. Date of Delivery
6/7/22

D. Is delivery address different from item 1?  ☐ Yes
   If YES, enter delivery address below:  ☒ No

FILED

3. Service Type: COLUMBIANA COUNTY
COURT OF COMMON PLEAS
☒ Certified Mail    Jun 28 2022

Reference Information
JUN 2 1 2022

COLUMBIANA COMMON PLEAS
ANTHONY J. DATTILIO
CLERK

Domestic Return Rece



USPS TRACKING #

9590 9266 9904 2184 2777 26

**United States Postal Service®**

● Sender: Please print your name, address and ZIP+4® below ●

**ANTHONY J DATTILIO
CLERK OF COURTS
COMMON PLEAS COURT
PO BOX 349
LISBON OH  44432-0349**

First-Class Mail
Postage & Fees Paid
USPS
Permit No. G-10

**2022 CV 00234 - PRIME HEALTHCARE FOUNDATION EAST LIVERPOOL LLC vs. AETNA HEALTH INC**

### SUMMARY

| | | |
|---|---|---|
| **Judge:** | **Court Type:** | **Case Type:** |
| WASHAM, SCOTT A | CIVIL | OTHER CIVIL |
| **Case Number:** | **Uniform Case Number:** | **Status:** |
| 2022 CV 00234 | 092022CV000234XXXXXX | OPEN |
| **Clerk File Date:** | **Status Date:** | **Waive Speedy Trial:** |
| 5/31/2022 | 5/31/2022 | ☐ |
| **Total Fees Due:** | **Booking Number:** | **Agency:** |
| 15.56 | | |
| **Agency Report Number:** | **Custody Location:** | |

### PARTIES

| TYPE | PARTY NAME | ADDRESS | ATTORNEY |
|---|---|---|---|
| PLAINTIFF | PRIME HEALTHCARE FOUNDATION EAST LIVERPOOL LLC | 425 WEST FIFTH STREET<br>EAST LIVERPOOL, OH 43920 | HOLBROOK ESQ, SCOTT (Main Attorney) |
| DEFENDANT | AETNA HEALTH INC | ON BEHALAD OF ITSELF AND ITS AFFILIATES<br>4400 EASTON COMMONS WAY, SUITE 125<br>COLUMBUS, OH 43219 | |

### EVENTS

| DATE | EVENT | JUDGE | LOCATION | RESULT | |
|---|---|---|---|---|---|
| 8/3/2022 4:00 PM | REVIEW | WASHAM, SCOTT A | COURTROOM # 2 | | |

### CASE DOCKETS

| IMAGE | DATE | ENTRY |
|---|---|---|
| 📄 2 | 6/28/2022 | CERTIFIED RETURN RECEIPT AETNA HEALTH IN |
| 📄 2 | 6/2/2022 | CERTIFIED RECEIPT AETNA HEALTH INC |
| 📄 1 | 6/1/2022 | SUMMONS ON COMPLAINT WITH COPY OF COMPLAINT ISSUED TO AETNA HEALTH INC BY CERTIFIED MAIL |
| 📄 2 | 5/31/2022 | WRITTEN INSTRUCTIONS FOR SERVICE FILED BY ATTORNEY SCOTT HOLBROOK |
| 📄 1 | 5/31/2022 | CASE DESIGNATION SHEET FILED BY ATTORNEY SCOTT HOLBROOK |
| | 5/31/2022 | EXHIBITS TO COMPLAINT FILED BY ATTORNEY SCOTT HOLBROOK |
| 📄 9 | 5/31/2022 | COMPLAINT FILED BY ATTORNEY SCOTT HOLBROOK |
| 📄 1 | 5/31/2022 | PAYMENT $250.00 RECEIPT #262456 |
| | 5/31/2022 | JUDGE WASHAM, SCOTT A: ASSIGNED |
| | 5/31/2022 | CASE FILED 05/31/2022 CASE NUMBER 2022 CV 00234 |